UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
NANCY ENOKSEN,

                    Plaintiff,

                                             MEMORANDUM & ORDER
         -against-                           18-CV-6735(JS)(ARL)

NASSAU COUNTY; NASSAU COUNTY DISTRICT
ATTORNEY'S     OFFICE     AND     THEIR
SUCCESSORS,     acting    in     their
individual   and   official   capacity;
DISTRICT ATTORNEY MADELINE SINGAS,
acting in her individual and official
capacity;    ASSISTANT    DISTRICT
ATTORNEY MARY RUDY, acting in her
individual   and   official   capacity;
ASSISTANT DISTRICT ATTORNEY PETER
MANCUSO, acting in his individual and
official  capacity;  "JOHN  AND  JANE
DOES  OF  THE  DISTRICT  ATTORNEY'S
OFFICE," unknown individuals acting
in   their   individual   and   official
capacity;   NASSAU   COUNTY   SPECIAL
INVESTIGATOR KAREN L. LUTZ, acting in
her individual and official capacity;
NASSAU   COUNTY   SHERIFF'S   OFFICE,
acting   in   their   individual   and
official  capacity;  "JOHN  AND  JANE
DOES OF THE NASSAU COUNTY SHERIFF'S
OFFICE," unknown individuals acting
in   their   individual   and   official
capacity;  NASSAU  COUNTY  SHERIFF'S
DEPARTMENT,    acting    in    their
individual   and   official   capacity;
"JOHN AND JANE DOES OF THE NASSAU
COUNTY    SHERIFF'S    DEPARTMENT,"
unknown individuals acting in their
individual and official capacity,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:       Nancy Enoksen, Pro Se
                     2002 Dolphin Lane
                     Holbrook, New York  11741

```
For Defendants:        Jennean R. Rogers, Esq.
                       Liora M. Ben-Sorek, Esq.
                       Nassau County Attorney's Office
                       One West Street
                       Mineola, New York  11501
```

SEYBERT, District Judge:

On November 26, 2018, <u>pro se</u> plaintiff Nancy Enoksen ("Plaintiff") commenced this action against Nassau County (the "County"); the Nassau County Sheriff's Department; the Nassau County District Attorney's Office (the "NCDAO"); Madeline Singas, the Nassau County District Attorney during the relevant time period; Nassau County Assistant District Attorneys Mary Ruddy ("ADA Ruddy") and Peter Mancuso ("ADA Mancuso"); and Karen L. Lutz, a special investigator at the NCDAO (collectively, "Defendants"). Plaintiff alleges Defendants violated her constitutional rights as protected by 42 U.S.C. §§ 1981, 1983, 1985.

Pending before the Court is Defendants' motion for summary judgment. (Mot., ECF No. 80; Support Memo, ECF No. 80-5; Reply, ECF No. 77.) Plaintiff has not opposed the motion, and the time to do so has passed. For the following reasons, Defendants' motion is GRANTED.

BACKGROUND

I.   Facts[1]

      The present dispute arises from the criminal charges brought against Plaintiff, now a disbarred attorney, for her conduct while representing two former clients, Lisa Elfante ("Elfante") and Laure-Ann and Gary Pagano (the "Paganos").

---

[1] Unless otherwise noted, the following facts are taken from Defendants' Rule 56.1 Statement (Defendants' Rule 56.1 Statement of Material Facts ("Defs. 56.1 Stmt."), ECF No. 80-1). Plaintiff failed to file the required Rule 56.1(c) statement in opposition to Defendants' motion for summary judgment. Federal Rule of Civil Procedure 56.1(c) requires a party opposing summary judgment to file a Rule 56.1 statement. "When the opposing party fails to respond to the moving party's Rule 56.1 Statement, the material facts contained in the moving party's statement are deemed admitted as a matter of law." Antwi v. Health & Human Sys. (Ctrs.) F.E.G.S., No. 13-CV-0835, 2014 WL 4548619, at *4 (S.D.N.Y. Sept. 15, 2014); see also Genova v. County of Nassau, 851 F. App'x 241, 244 (2d Cir. 2021) ("Plaintiffs who ignore their obligations under Local Rule 56.1 do so at their own peril: 'In the typical case, failure to respond [to a Local Rule 56.1 statement] results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met.'" (quoting T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 418 (2d Cir. 2009)).) However, "a district court must ensure that there is support in the record for facts contained in unopposed Rule 56.1 statements before accepting those facts as true." United States v. Abady, No. 03-CV-1683, 2004 WL 444081, at *3 (S.D.N.Y. Mar. 11, 2004) (citing Giannullo v. City of New York, 322 F.3d 139, 140-43 (2d Cir. 2003)). Therefore, the Court only cites to those portions of Defendants' 56.1 Statement that the Court finds are supported by the record. Bricklayers Ins. & Welfare Fund v. Job Opportunities for Women, Inc., No. 16-CV-6935, 2019 WL 343243, at *1 (E.D.N.Y. Jan. 28, 2019). The facts therein will be deemed admitted.

Defendants' exhibits, which are attached to the Declaration of Jennean Rogers (see ECF No. 80-6), are identified by letters. For ease of citation, the Court will simply cite to the lettered exhibits.

First, on or about July 11, 2014, Elfante filed a complaint with the NCDAO stating that Plaintiff had stolen $199,233.01 from her by withdrawing funds from an escrow account that had been created to deposit funds Elfante received under a settlement agreement in an unrelated personal injury action (the "First Criminal Action"). (Defs. 56.1 Stmt. ¶ 15.) Plaintiff, represented by counsel, Attorney Michael Alber ("Alber"), was tried and convicted of Grand Larceny in the Second Degree for embezzling $187,000.00 from Elfante. (Id. ¶¶ 16, 18.) Plaintiff was sentenced to three and one-third to ten years in prison and ordered to pay restitution. (Id. ¶ 17.)

The Second Criminal Action arose out of Plaintiff's representation of the Paganos in connection with the sale of their home in Broad Channel, New York (the "Property"). (Id. ¶ 20.) In January 2015, the Paganos entered into a contract of sale with Brian and Therese McCabe (the "McCabes") to sell the Property to the McCabes for $400,000 (the "Contract"). (Id. ¶ 21.) Pursuant to the Contract: The McCabes agreed to pay the Paganos $40,000 as a ten percent down payment (id. ¶ 22); and, as the Paganos' attorney, Plaintiff agreed to hold the $40,000 down payment in escrow (the "Escrow Funds") until the closing (id. ¶ 23). On January 9, 2015, the McCabes' attorney sent Plaintiff two copies of the Contract and a check in the amount of $40,000 made payable to Plaintiff "as attorney to be held in escrow pursuant to the

4

terms of the [Contract]." (Id. ¶ 25.)   That same day, Plaintiff deposited the check into an attorney escrow account, ending in number 1164, at TD Bank and to be held for the Paganos (the "Escrow Account"). (Id. ¶ 26.)

In or about April 2015, Plaintiff was suspended from the practice of law stemming from the complaint filed by Elfante. (Id. ¶ 27.)   As a result, she ceased representing the Paganos in connection with the sale of their Property. (Id.)   In June 2015, the Paganos retained Attorney Derrick Magwood ("Magwood") to continue representing them in the sale of the Property. (Id. ¶ 28.)   Building code issues delayed the closing on the Property, which was eventually scheduled for June 27, 2016. (Id. ¶¶ 29-30.) As the closing date approached, Magwood contacted Plaintiff to request that she release the Escrow Funds to him on behalf of the Paganos. (Id. ¶ 31.)   However, Plaintiff failed to provide the Escrow Funds to Magwood, stating that the Escrow Funds could not be released to Magwood, because Plaintiff was the contractual escrow attorney, and because her account had been frozen due to her suspension from the practice of law. (Id. ¶¶ 32-33.)

As a result, on June 23, 2016, Magwood raised the issue with the Nassau County Bar Association, which referred him to an ethics attorney. (Id. ¶ 34.)   Based on that consultation, Magwood contacted Plaintiff by telephone and email and informed her the date of the closing and that the money in her account was not

frozen and could be transferred to Magwood prior to the closing or released at the time of closing.  (Id. ¶ 35.)  Plaintiff failed to release the Escrow Funds prior to closing, which went forward, and stopped responding to Magwood's calls.  (Id. ¶¶ 36-38.) Accordingly, on September 2, 2016, Magwood contacted Alber, Plaintiff's counsel in the First Criminal Action, prompting an immediate call from Plaintiff in which she offered additional reasons for not releasing the Escrow Funds.  (Id. ¶¶ 40-42.)  In response to Plaintiff's purported concerns, Magwood offered to go to the bank with Plaintiff to straighten out any issues.  (Id. ¶ 43.)  Plaintiff initially agreed but thereafter stopped responding to Magwood's follow-up phone calls.  (Id. ¶ 44.)

Thus, on December 6, 2016, Magwood filed a grievance complaint with the Grievance Committee, Tenth Judicial District, based on Plaintiff's failure to release the Escrow Funds as required under the Contract.  (Id. ¶ 45.)  Further, in May 2017, the Paganos filed a criminal complaint with the NCDAO based upon Plaintiff's failure to release the Escrow Funds as required under the Contract.  (Id. ¶ 48.)

The NCDAO commenced an investigation into the Paganos' complaint.  (Id. ¶ 49.)  The NCDAO investigation revealed: (1) As of January 1, 2015, the Escrow Account had a balance of $81.26; (2) On January 9, 2015, Plaintiff deposited the Escrow Fund into the Escrow Account; and (3) By March 2, 2015, the Escrow Account

was deficient, with a negative balance of $1,485.10.  (<u>Id.</u> ¶¶ 54-57.)

While the NCDAO investigation continued, Alber advised Magwood that Plaintiff intended to pay the Paganos their money and requested Magwood send the Paganos affidavits Alber had prepared. (<u>Id.</u> ¶ 50.)  The affidavits, prepared with the date August 10, 2017, read:

> My family has used Nancy Enoksen in the past as an attorney.  Her work was excellent, and we have known her to be honest and straightforward.  We know Nancy did not intend to steal or deprive us of any money.  We know Nancy would never have that intent.  We do not want her prosecuted.  We seek to withdraw any complaint previously filed.

(Ex. O; <u>see also</u> Defs. 56.1 Stmt. ¶¶ 51-52.)  However, Magwood instructed the Paganos not to execute the affidavits until they had received the Escrow Funds.  (Defs. 56.1 Stmt. ¶ 53.)

On August 14, 2017, Plaintiff was arrested and arraigned on a charge of Grand Larceny in the Third Degree for stealing the Escrow Funds.  (<u>Id.</u> ¶ 58.)  Two days later, the Paganos signed the affidavits prepared by Alber.  (<u>Id.</u> ¶ 60.)  Sometime shortly after Plaintiff's arrest, Magwood received a blank check from Horowitz Plumbing & Heating, a company jointly owned by Plaintiff's husband and brother-in-law, John Enoksen.  (<u>Id.</u> ¶¶ 60-61.)  Upon receiving the check, Magwood immediately contacted John Enoksen to verify that he was authorizing Magwood to write the check out in the

amount of $40,000 as payment to the Paganos.  (Id. ¶ 62.)  John Enoksen verified as much, and Magwood sent the check, dated August 17, 2017, to the Paganos.  (Id. ¶¶ 63-64.)  Thereafter, Magwood received the signed affidavits and forwarded them to Alber.  (Id. ¶ 65.)  Nevertheless, Magwood did not contact the NCDAO to inform it that the Paganos had received the $40,000.  (Id. ¶ 66.)

It was not until sometime in January 2018 that Alber, during a conversation with ADA Ruddy regarding a global settlement encompassing the two criminal cases against Plaintiff, advised ADA Ruddy that Plaintiff had made restitution to the Paganos.  (Id. ¶¶ 68-69.)  That same month, ADA Ruddy contacted the Paganos, who sent her a copy of the check and the signed affidavits.  (Id. ¶¶ 71-73.)  At that time, however, the Paganos remained willing to testify as to the circumstances surrounding the signing of the affidavit, which contradicted the allegations in their complaint. (Id. ¶¶ 74-75.)  But on or about July 23, 2017, the Paganos advised ADA Mancuso that they would not testify against Plaintiff before a grand jury.  (Id. ¶ 76.)  As a result, the NCDAO consented to the dismissal of the case on the court's motion.  (Id. ¶ 77.)

II. Procedure

Plaintiff initiated this action on November 26, 2018. The Court liberally construes Plaintiff's pro se Complaint to assert violations of her Fourth and Fourteenth Amendment constitutional rights under 42 U.S.C § 1983 ("Section 1983"), and

violations of 42 U.S.C. § 1981 and 1985 ("Section 1981" and "Section 1985").  Specifically, the Court construes the Complaint to assert the following causes of action pursuant to Section 1983: (1) false arrest and false imprisonment; (2) malicious prosecution and abuse of process; (3) unidentified due process violations; and (4) Monell liability.  (Compl., ECF No. 1, ¶ 1.)  After being granted an extension, Defendants answered the Complaint on August 5, 2019.  (Answer, ECF No. 28.)

The parties completed discovery on July 8, 2021, and Defendants request for leave to file the present motion for summary judgment followed.  The Court granted Defendants leave to file their motion for summary judgment and set a briefing schedule. Defendants filed their motion pursuant to the briefing schedule, but notwithstanding Plaintiff being served with the required notice to pro se litigants regarding the consequences of not responding to a summary judgment motion (see ECF No. 80-2; see also Local Civil Rule 56.2), and the fact that Plaintiff had been an attorney who presumptively knows the potential consequences of not responding, Plaintiff failed to oppose.

DISCUSSION

I.   Legal Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "Material

facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wagner v. Chiari & Ilecki, LLP, 973 F.3d 154, 164 (2d Cir. 2020) (quoting Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007)) (internal quotation marks omitted). The movant bears the burden of establishing that there are no genuine issues of material fact in dispute. CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial," as Plaintiff does here, "the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

On a motion for summary judgment the Court considers the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011). In reviewing the record, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2

(E.D.N.Y. Oct. 23, 2015) (quoting <u>McLee v. Chrysler Corp.</u>, 109
F.3d 130, 134 (2d Cir. 1997)).  Further the court is to review a
<u>pro se</u> party's submissions liberally.  <u>Erickson v. Pardus</u>, 551
U.S. 89, 94 (2007).  "Nevertheless, the non-moving party cannot
rest on mere allegations, speculation or denials."  <u>Routier v.
O'Hara</u>, No. 08-CV-2666, 2013 WL 3777100, at *4 (E.D.N.Y. July 17,
2013) (citing Fed. R. Civ. Pro. 56(e); <u>Scotto v. Almenas</u>, 143 F.3d
105, 114 (2d Cir. 1998)).

    When, as here, a non-moving party fails to oppose a
motion for summary judgment, the court may "grant summary judgment
if the motion and supporting materials -- including the facts
considered undisputed -- show that the movant is entitled to it."
Fed. R. Civ. P. 56(e).  "An unopposed summary judgment motion,
however, may fail 'where the undisputed facts fail to show that
the moving party is entitled to judgment as a matter of law.'"
<u>Routier</u>, 2013 WL 3777100, at *4 (quoting <u>Vt. Teddy Bear Co. v. 1-
8000 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004)).  So, even
"where the non-moving party 'chooses the perilous path of failing
to submit a response to a summary judgment motion, the district
court may not grant the motion without first examining the moving
party's submission to determine if it has met its burden of
demonstrating that no material issue of fact remains for trial.'"
<u>Vt. Teddy Bear Co.</u>, 373 F.3d at 244 (quoting <u>Amaker v. Foley</u>, 274
F.3d 677, 681 (2d Cir. 2001)).

II.  Analysis

    A.   Section 1983

        Section 1983 authorizes a civil claim for damages against any person who, acting under color of state law, deprives another of any rights, privileges, or immunities secured by the Constitution or the laws of the United States.  See 42 U.S.C. § 1983; Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010).  Section 1983 "is not itself a source of substantive rights."  Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Rather, Section 1983 provides "a method for vindicating federal rights elsewhere conferred," such as those conferred by the Fourth and Fourteenth Amendments to the Constitution.  Id.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  Wyatt v. Cole, 504 U.S. 158, 161 (1992).

       1.   Fourteenth Amendment Claims

        Defendants are entitled to summary judgment on Plaintiff's claims arising under the Fourteenth Amendment.  To begin, Plaintiff asserts in conclusory fashion that Defendants "denied [P]laintiff her protections under the Fourteenth Amendment" by violating and conspiring to violate her right to privacy.  (Compl. ¶¶ 16, 18.)  Nowhere in her Complaint does

Plaintiff specify how Defendants violated her privacy rights. However, Defendants did access account information regarding the Escrow Account during their investigation into Plaintiff's dealings with the Paganos. The right to privacy, which is "implicit in the concept of ordered liberty protected by the [Due Process Clause of the] Fourteenth Amendment," Fleischman v. Wyoming County, No. 21-CV-0318, 2021 WL 5916009, at *7 (W.D.N.Y. Dec. 15, 2021) (quoting Nassau County Emp. "L" v. County of Nassau, 345 F. Supp. 2d 293, 301 (E.D.N.Y. 2004)), includes an "interest in avoiding disclosure of personal matters," Whalen v. Roe, 429 U.S. 589, 599 (1977). "However, where the Plaintiff gives the financial information voluntarily to a third party, 'even on the understanding that the communication was confidential, he could not object if the third party conveyed that information to law-enforcement authorities.'" Barber v. Winn, No. 95-CV-1030, 1997 WL 151999, at *3 (N.D.N.Y. Mar. 31, 1997), aff'd, 131 F.3d 130 (2d Cir. 1997) (citations omitted). Here, Plaintiff cannot object to Defendants accessing account information regarding the Escrow Account, because that information was held by a third party, TD Bank.

Further, to the extent Plaintiff claims that her arrest, detention, and subsequent prosecution deprived her of her due process rights, such argument is misplaced. Rather, it is well established that "where a particular Amendment provides an

explicit textual source of constitutional protection against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).   Thus, Plaintiff's allegations that Defendants falsely arrested and maliciously prosecuted her will be analyzed under the Fourth Amendment.   Id. at 274.

Last, Plaintiff asserts claims under Section 1983 for defamation and negligence.   To begin, because "mere negligence cannot support a § 1983 action," Defendants are entitled to summary judgment as to Plaintiff's negligence claims.   Martin v. City of New York, No. 11-CV-2862, 2012 WL 4569757, at *1 (E.D.N.Y. Sept. 29, 2012) (citing Daniels v. Williams, 474 U.S. 327, 332 (1986)).[2] Second, it appears that Plaintiff bases her defamation and slander claims on Defendants releasing a press release regarding her arrest.   (Compl. ¶ 3.)   A Section 1983 liberty interest claim of this sort is commonly referred to as a "stigma plus" claim, and it "requires a plaintiff to allege (1) the utterance of a statement

---

[2] To the extent Plaintiff is pursuing her negligence claim under New York State law, it is well settled in New York that "a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." Savino v. City of New York, 168 F. Supp. 2d 172, 180 (S.D.N.Y. 2001), rev'd on other grounds, 331 F.3d 63 (2d Cir. 2003)

about her that is injurious to her reputation, 'that is capable of being proved false, and that he or she claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement.'" Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (quoting Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds, Connecticut Dept. of Public Safety v. Doe, 538 U.S. 1 (2003)). Here, however, there is no evidence in the record to support Plaintiff's claim that the statements Defendants made in the press release were false. See Savino v. City of New York, 168 F. Supp. 2d 172, 179 (S.D.N.Y. 2001) ("Plaintiff alleges that the City and the DOI defamed him by issuing the June 27, 1996 press release, which announced that he had been arrested and charged with the theft of the ring. It is undisputed that plaintiff was arrested and charged, and, therefore, he cannot prove the falsity of the statement."), rev'd on other grounds, 331 F.3d 63 (2d Cir. 2003).

Accordingly, Defendants' motion for summary judgment as to Plaintiff's Section 1983 claims arising under the Fourteenth Amendment is GRANTED.

### 2.   Fourth Amendment Claims

Plaintiff alleges Defendants falsely arrested and imprisoned her, maliciously prosecuted her, and abused the criminal process.  The Court addresses each allegation in turn,

finding they are without merit and that Defendants are entitled to summary judgment.

Under New York law,[3] the existence of probable cause is a complete defense to a claim for false arrest, false imprisonment, and malicious prosecution. Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (false arrest); Savino, 331 F.3d at 72 (malicious prosecution); Russo v. City of Bridgeport, 479 F.3d 196, 203-04 (2d Cir. 2007) (false arrest and false imprisonment). However, the relevant probable cause determination depends on the stage of the criminal proceeding.

At the arrest stage, the Second Circuit has described probable cause as "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013) (quoting Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006)); Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021). "To assess probable cause, a court considers only the facts 'available to the officer at the time of the arrest and

---

[3] In analyzing Section 1983 claims for false arrest, false imprisonment, and malicious prosecution, the Court looks to the law of the state in which the arrest occurred. Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006).

immediately before it.'"   Ashley, 993 F.3d at 136 (quoting Stansbury, 721 F.3d at 89).

At the prosecution stage, however, the probable cause standard is "slightly higher."  Stansbury, 721 F.3d at 95; Hoyos v. City of New York, 650 F. App'x 801, 802 (2d Cir. 2016) (summary order).  "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Stansbury, 721 F.3d at 95 (quoting Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003)); Hoyos v. City of New York, 999 F. Supp. 2d 375, 390 (E.D.N.Y. 2013) ("[T]he relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced.").  As a result, timing is a key component in a court's analysis, with probable cause in the context of malicious prosecution being measured "as of the time the judicial proceeding is commenced (e.g., the time of the arraignment)," not the time of the arrest.  Hoyos, 999 F. Supp. 2d at 390 (quoting Davis v. City of New York, 373 F. Supp. 2d 322, 333 (S.D.N.Y. 2005)).

In this instance, it is undisputed that Defendants had probable cause to believe Plaintiff committed grand larceny when they arrested her and commenced a criminal action against her. Under the New York Penal Law, a person is guilty of grand larceny in the third degree when she steals property, the value of which

exceeds three thousand dollars.  N.Y. PENAL LAW § 1155.35(1).  At
the time of Plaintiff's arrest, Defendants were in receipt of a
criminal complaint, filed by the Paganos, stating Plaintiff had
not paid them the Escrow Funds (which exceeded three thousand
dollars) as required under the Contract.  Defendants' subsequent
investigation further revealed that Plaintiff had drained the
Escrow Account.  And as for the affidavits executed by the Paganos,
which undermined the allegations they made in their criminal
complaint, it is undisputed that Defendants were not aware of or
in possession of those affidavits at the time of Plaintiff's arrest
and the commencement of proceedings against her on August 14, 2017.
Thus, based on the undisputed facts available to Defendants up to
and at the time of Plaintiff's arrest and the initiation of
criminal proceedings against her, the Court finds as a matter of
law that Defendants had probable cause to arrest, imprison, and
prosecute Plaintiff for Grand Larceny in the Third Degree.

        As for Plaintiff's Section 1983 claim for malicious
abuse of process, such a claim lies against a defendant who
"(1) employs regularly issued legal process to compel performance
or forbearance of some act (2) with intent to do harm without
excuse of justification, and (3) in order to obtain a collateral
objective that is outside the legitimate ends of the process."
Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting
Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)).

Here, liberally construing Plaintiff's Complaint, it appears Plaintiff's malicious abuse of process claim is premised on her allegation that Defendants' "conspired to maliciously retaliate against [P]laintiff for not taking a plea deal on the unrelated matter," i.e., the First Criminal Action. (Compl. ¶ 11; see also Pl. Depo. Tr. at 101:20-25, Ex. C.)  However, "to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against [her] by pursuing [her] arrest and prosecution." Savino, 331 F.3d at 77.  Rather, "a plaintiff must establish that the defendants had an improper purpose in instigating the action"; a malicious motive alone will not suffice. Id.; see also Peter L. Hoffman. Lotte, LLC v. Town of Southampton, 523 F. App'x 770, 771-772 (2d Cir. 2013) (affirming district court's dismissal of the plaintiffs' abuse of process claim and holding the plaintiffs' allegations that the defendants filed criminal charges in retaliation for the plaintiffs' attempt to enjoin the local Justice court or in an attempt to "coerce and pressure" the plaintiffs from pursuing certain legal defenses were not sufficient collateral objectives necessary for a malicious abuse of process claim); Rao v. City of New York, No. 14-CV-7422, 2018 WL 1582289, at *8 (E.D.N.Y. Mar. 29, 2018) ("The case law distinguishes between a malicious motive and an improper purpose.  The former, by itself, is insufficient to state a claim of abuse of process; the plaintiff

must also allege that the defendant acted primarily to achieve an improper objective." (emphasis omitted)).  The New York Court of Appeals has cited the following as examples of collateral objectives or improper purposes covered by this tort: the infliction of economic harm; extortion; blackmail; and retribution. Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n, 343 N.E.2d 278, 283 (1975)).

In the present case, there is no competent evidence that Defendants initiated the action against Plaintiff with an improper purpose, as there is no evidence of a collateral effort to inflict economic harm on Plaintiff, let alone extort, blackmail, or achieve retribution against her.  Contra Conte v. County of Nassau, No. 06-CV-4746, 2010 WL 3924677, at *20-21 (E.D.N.Y. Sept. 30, 2010) (Bianco, J.) (denying the defendants' motion for summary judgment as to the plaintiff's malicious abuse of process claim where disputes of fact remained regarding whether the defendants used their prosecution and subpoena powers "as part of a collateral effort to force [the plaintiff] to return money to various customers and/or destroy [the plaintiff's] business").

Accordingly, Defendants' motion for summary judgment as to Plaintiff's Section 1983 claims for false arrest, false

imprisonment, malicious prosecution, and malicious abuse of process is GRANTED.[4]

### 3. *Monell* Liability

Next, Plaintiff asserts a claim for Monell liability. It appears that Plaintiff is pursuing widespread de facto custom or practice and failure-to-supervise theories of Monell liability. (See Compl. ¶ 1D ("The District Attorney's Office and District Attorney caused the misconduct of their subordinate municipal employees when they refused and or failed by acquiescing in a longstanding practice or custom of official policy to conduct a meaningful investigation and to protect a citizen from continued invalid prosecution."); id. ("Nassau County permitted and ignored the behavior of its employees . . . [and] permitted its employees to violate [P]laintiff's constitution [sic] rights and did nothing to end or correct it.").)

It is well established that a municipality such as the County cannot be held liable under Section 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). "Rather, municipalities may be liable [under Section 1983] only where 'execution of a government's policy or custom'

---

[4] Since the Court finds there was no underlying constitutional violation, it is unnecessary to address Defendants' absolute immunity defense. Liggins v. Griffo, 356 F. App'x 537, 540 (2d Cir. 2009) (summary order).

causes constitutional violations." <u>Buari v. City of New York</u>, No. 18-CV-12299, 2021 WL 1198371, at *21 (S.D.N.Y. Mar. 30, 2021) (quoting <u>Monell</u>, 436 U.S. at 694).  "To prevail against a municipality in a Section 1983 action, a plaintiff must plead and prove three elements: (1) an official policy or custom that (2) caused the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Kogut v. County of Nassau</u>, No. 06-CV-6695, 2009 WL 5033937 (E.D.N.Y. Dec. 11, 2009) (citing <u>Hartline v. Gallo</u>, 546 F.3d 95, 103 (2d Cir. 2008)).

Because the Court finds as a matter of law that the Defendants did not commit any unconstitutional act, Plaintiff cannot sustain a claim for <u>Monell</u> liability.  <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006).  In any event, "[b]eyond the alleged facts of this particular case, [P]laintiff[] ha[s] presented neither argument nor a single piece of evidence regarding the existence of a custom or policy in" the County.  <u>Raphael v. County of Nassau</u>, 387 F. Supp. 2d 127, 131 (E.D.N.Y. 2005).

Accordingly, Defendants' motion for summary judgment as to Plaintiff's Section 1983 claims for <u>Monell</u> liability is GRANTED.

B.   <u>Sections 1981[5] and 1985</u>

The four elements of a Section 1985 claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or

---

[5] <u>See</u> <u>infra</u> n.6.

indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993) (citing United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)); Bailey v. New York L. Sch., No. 19-3473, 2021 WL 5500078, at *4 (2d Cir. Nov. 24, 2021). Further, "the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Mian, 7. F.3d at 1088 (quoting United Bhd. of Carpenters, Local 610, 463 U.S. at 829) see also Spencer v. Casavilla, 903 F.2d 171, 174 (2d Cir. 1990).

Here, there is no competent evidence that Plaintiff's race factored into Defendants' decision to investigate and prosecute her. Thus, even putting aside whether Plaintiff has demonstrated the existence of a conspiracy, which the Court doubts, Plaintiff's Section 1985 claim fails. See Chance v. Reed, 538 F. Supp. 2d 500, 509 (D. Conn. 2008) (granting summary judgment on the plaintiff's Section 1985 claim where the plaintiff "offer[ed] no evidence that could show that any of the defendants' actions were motivated in any way by race"). Moreover, the Court agrees with Defendants that the intra-corporate doctrine bars Plaintiff's

claim, because all of the individually named Defendants were NCDAO employees during the relevant time period. See id. While it is possible for a conspiracy to exist "when the individual defendants are alleged to have been 'motivated by an independent personal stake in achieving the [organization's] objective,'" Plaintiff has produced no evidence of such a situation. Id. (quoting Spector v. Bd. of Trs. of Community-Technical Colls., 463 F. Supp. 2d 234, 251 (D. Conn. 2006)).

Accordingly, Defendants' motion for summary judgment as to Plaintiff's Section 1985 claim is GRANTED. For the same reason, Defendants' motion for summary judgment as to Plaintiff's claims arising under Section 1981, to the extent the statute even applies here,[6] is GRANTED.

C.   Remaining Claims and Defendants

First, Plaintiff's claims against the John Doe Defendants must be dismissed for failure to prosecute, because discovery has closed, and Plaintiff has had ample time and opportunity to identify and serve the John Doe Defendants. Asseng v. County of Nassau, No. 14-CV-5275, 2021 WL 5966290, at *11

---

[6] Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." Patterson v. County of Oneida, 375 F.3d 206, 224 (2d Cir. 2004) (emphasis added). The statute has no bearing here. But in any event, there is nothing in the record to show that any of Defendants' conduct in this case was motivated by Plaintiff's race.

(E.D.N.Y. Dec. 16, 2021) (quoting Delrosario v. City of New York, No. 07-CV-2027, 2010 WL 882990, at *5 (S.D.N.Y. Mar 4, 2010)). Second, to the extent pursued, it is well settled Plaintiff cannot maintain claims against the Nassau County Sherriff's Department, because it is an administrative arm that does not have a legal identity separate and distinct from the County. Anderson v. Incorporated Village of Hempstead, No. 15-CV-1485, 2022 WL 267875, at *5, n.4 (E.D.N.Y. Jan. 28, 2022). Accordingly, Plaintiff's claims against the remaining John Doe Defendants and the Nassau County Sherriff's Department are DISMISSED.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

For the stated reasons, Defendants' motion for summary judgment is GRANTED in its entirety.  Further, pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  Defendants shall mail a copy of this Order to Plaintiff at her address of record and file proof of service forthwith.  The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

**SO ORDERED.**


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February  18 , 2022
       Central Islip, New York